IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

**GREAT AMERICAN E&S INSURANCE COMPANY,**

   **Plaintiff,**

  vs.

**TURNOUTZ, LLC,**

   **Defendant**.

Civil Action No. 7:19CV377

# COMPLAINT FOR DECLARATORY JUDGMENT

  Great American E&S Insurance Company ("Great American"), for its Complaint for Declaratory Judgment, alleges on knowledge, information and belief as follows:

## NATURE OF THE ACTION

  1. Great American brings this action to obtain a judicial determination and declaration as to the parties' rights and obligations under Commercial Excess Liability Insurance Policy No. XS 4957439-00 issued by Great American to Turnoutz, LLC ("Turnoutz"), for the policy period September 22, 2015 to September 22, 2016 (the "Excess Policy"). A true and correct copy of the Excess Policy, without the application, is attached to this Complaint as Exhibit 1.

  2. The Excess Policy is an excess liability policy that affords coverage in excess of the underlying insurance, which is a general liability policy issued by Evanston Insurance Company to Turnoutz for the policy period September 22, 2015 to September 22, 2016 (the "Primary Policy"). A true and correct copy of the Primary Policy, without the application, is attached to this Complaint as Exhibit 2.

  3. An actual and justiciable controversy has arisen and now exists relating to the parties' respective rights, duties and obligations under the Excess Policy.

4. In particular, Great American seeks a declaratory judgment that there is no coverage for Turnoutz with respect to a consolidated lawsuit under the case styled *Felicia Crowell, et al. v. Cory A. Sheward, et al.,* No. 17-C-775-D (W. Va. Cir. Ct., Raleigh County) (the "Underlying Action"). The Underlying Action originally was filed as two separate lawsuits styled *Willoughby v. Sheward, et al.*, No. 18-C-175-D (W. Va. Cir. Ct., Raleigh County) (the "*Willoughby* Action") and *Crowell v. Sheward, et al.,* No. 17-C-775 (W. Va. Cir. Ct., Raleigh County) (the "*Crowell* Action"). A true and correct copy of the operative Complaints as of the date of consolidation in the Underlying Action are attached hereto as Exhibits 3 and 4.

## PARTIES

5. Great American is a Delaware corporation with a principal place of business in Cincinnati, Ohio. Great American legally transacts insurance business in the Commonwealth of Virginia and within the geographical jurisdiction of this Court.

6. Turnoutz is a limited liability company. The members of Turnoutz are citizens of Virginia. None of the members are citizens of Delaware or Ohio.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332. There is complete diversity of citizenship, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this Court pursuant to 28 U.S.C. § 1391. Defendants' members all reside in this District and Division, and a substantial part of the events giving rise to this action occurred in this District and Division.

# FACTUAL ALLEGATIONS

**The Underlying Action**

9. Turnoutz provided Great American notice of the *Willoughby* Action and the *Crowell* Action, seeking coverage under the Excess Policy.

10. The Underlying Action now consolidates two lawsuits – the *Willoughby* Action and the *Crowell* Action – that concern the same automobile accident. On March 28, 2016, Carlisa Crowell was operating an automobile with seven passengers along Interstate 77 near Ghent, West Virginia. On the same date and at the same time, Cory Sheward was operating an automobile along the same road, traveling southbound in the northbound lanes (in the wrong direction). Mr. Sheward's vehicle collided with Ms. Crowell's vehicle head-on. As a result of the collision, Ms. Crowell and three others in her vehicle suffered fatal injuries, and the other passengers in Ms. Crowell's vehicle suffered severe injuries.

11. The *Willoughby* Action was filed by a parent of three children who were passengers in Ms. Crowell's vehicle, one of whom was fatally injured in the accident and the other two of whom were severely injured, seeking damages as a result of the accident.

12. The *Crowell* Action was filed by the administrator of the estates of both Ms. Crowell and one of her passengers, and one of the passengers individually, seeking damages as a result of the accident.

13. The Underlying Action alleges dram shop liability against Turnoutz or its successor because Mr. Sheward allegedly was a patron, customer, and business invitee of Turnoutz, d/b/a One Stop, and more specifically, One Stop #520, in Kenna, West Virginia. Ex. 3, ¶¶ 28-34; Ex. 4, ¶¶ 20-27. The Underlying Action alleges that Turnoutz negligently, carelessly, and/or recklessly sold alcohol to Mr. Sheward with knowledge that Mr. Sheward was intoxicated and operated a vehicle. Ex. 3, ¶ 30; Ex. 4, ¶ 22.

14. Great American has denied coverage for the Underlying Action based on the terms of the Excess Policy.

**Excess Policy**

15. As explained above, Great American issued the Excess Policy to Turnoutz for the policy period September 22, 2015 to September 22, 2016.

16. The Excess Policy has a $3 million each occurrence and $3 million aggregate limit, excess of the specified underlying insurance.

17. The Excess Policy contains Excess Liability Coverage Form AES 3113 (Ed. 12/05) PRO, which sets forth the following Insuring Agreement:

> I. Coverage
>
> We will pay on behalf of the Insured the amount of "loss" covered by this insurance in excess of the "Underlying Limits of Insurance" shown in Item 5. of the Declarations, subject to Insuring Agreement Section II., Limits of Insurance. Except for the terms, conditions, definitions, and exclusions of this policy, the coverage provided by this policy will follow the "first underlying insurance."

Excess Policy, Section I.A.

18. The Excess Policy contains the following Limits of Insurance provision:

> II. Limits of Insurance
>
> * * *
>
> B. The Limits of Insurance of this policy will apply as follows:
>
> > 1. This Policy applies only in excess of the "Underlying Limits of Insurance" shown in Item 5. of the Declarations.

Excess Policy, Section II.B.

19. The Excess Policy defines "First underlying insurance" as "the policy or policies of insurance stated as such in Items 5. of the Declarations." Excess Policy, Section V.A.

20. The Excess Policy defines "Underlying insurance" as "first underlying insurance and all policies of insurance listed in Item 5. Of the Declarations." Excess Policy, Section V.C.

21. Item 5. of the Excess Policy's Declarations reads as follows:

COMMERCIAL EXCESS LIABILITY DECLARATIONS PAGE

5. UNDERLYING INSURANCE

| Carrier Information | Type of Coverage | Limits of Insurance |
|---|---|---|
| EVANSTON INSURANCE COMPANY TBD 09/22/2015 – 09/22/2016 | GENERAL LIABILTY | $1,000,000 EA OCCURRENCE $2,000,000 GEN AGGREGATE $2,000,000 PROD/COMP OPS $1,000,000 PER/ADV INJURY |

Excess Policy, Declarations, Item 5.

22. The Excess Policy contains the GAI 6125 (Ed. 06 97) endorsement entitled, LIQUOR LIABILITY EXCLUSION, which states:

> THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.
> LIQUOR LIABILITY EXCLUSION
>
> The following exclusion is added to Section IV-EXCLUSIONS:
>
> Any liability of any "Insured" by reason of:
>
> (1) causing or contributing to the intoxication of any person;
>
> (2) the furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or
>
> (3) any, statute, ordinance, or regulation relating to the sale, gift, distribution or use of alcoholic beverages.
>
> This endorsement does not change any other provision of the policy.

Excess Policy, Ends. GAI 6125 (Ed. 06 97) (the "Liquor Liability Exclusion").

23. The Excess Policy contains additional terms, conditions, and limitations that specify the scope of coverage available.

**Primary Policy**

24. The "UNDERLYING INSURANCE" referenced in Item 5 of the Excess Policy is the Primary Policy, as defined in Paragraph 2 above.

25. The Primary Policy has two separate coverage parts, as reflected on the Common Policy Declarations page – a Commercial General Liability Coverage Part and a Liquor Liability Coverage Part. Primary Policy, Common Policy Declarations.

26. The Primary Policy contains separate limits of liability for the two coverage parts.

   a. The Primary Policy's Commercial General Liability Coverage Part, which has Limits of Liability of: (1) $ 2,000,000 General Aggregate Limit (Other Than Products/Completed Operations); (2) $2,000,000 Products/Completed Operations Aggregate Limit; (3) $1,000,000 Personal and Advertising Injury Limit; (4) $1,000,000 Each Occurrence Limit; and (5) $100,000 Damage to Rented Premises (Each Occurrence).

   b. The Primary Policy's Liquor Liability Coverage Part, which has Limits of Liability of: (1) $1,000,000 Each Common Cause; and (2) $ 1,000,000 Aggregate. *See* Primary Policy, Commercial General Liability Coverage Part Declarations & Liquor Liability Coverage Part Declarations.

27. The Commercial General Liability Coverage Form in the Primary Policy contains a "Liquor Liability" exclusion that bars coverage for "'bodily injury' for which any insured may be held liable by reason of (1) causing or contributing to the intoxication of any person…" Primary Policy, Commercial General Liability Coverage Form, Section I.2.c.(1). Thus, the Primary Policy's Commercial General Liability Policy Form does not afford coverage for liquor

liability; instead, the Primary Policy affords coverage for liquor liability only under the separate Liquor Liability Policy Form with its separate limits of liability.

28. The Primary Policy contains additional terms, conditions, and limitations that specify the scope of coverage available.

29. Great American has denied that the Excess Policy affords coverage for the Underlying Action for two reasons: (1) the Excess Policy applies as excess insurance above only the general liability insuring agreement in the Primary Policy, as reflected by the "general liability" description of coverage and the referenced general liability limits of liability in the underlying insurance, and does not afford coverage above the separate liquor liability insuring agreement; and (2) the Liquor Liability Exclusion in the Excess Policy bars coverage for the Underlying Action.

30. Nothing in this Complaint should be construed as a waiver by Great American of any other coverage defenses under the Excess Policy, and Great American reserves the right to raise all other Excess Policy terms and conditions as defenses to coverage as may be appropriate upon further investigation and discovery.

## Controversy and Ripeness

31. Great American has identified the reasons why the Excess Policy does not afford coverage for the Underlying Action. Turnoutz has made a demand on Great American for coverage under the Excess Policy with respect to the Underlying Action, and Great American has denied coverage and reserved all rights. A controversy therefore exists that is ripe for adjudication.

## COUNT I

### (Declaratory Judgment As To Scope of Insuring Agreement)

32. Great American incorporates by reference each of the allegations of paragraphs 1 through 31 of this Complaint.

33. The Underlying Action does not fall within the scope of the Excess Policy's Insuring Agreement because the Excess Policy follows form only to the Commercial General Liability Coverage Part in the Primary Policy, and not to the separate Liquor Liability Coverage Part in the Primary Policy. Therefore, the Underlying Action does not fall within the scope of potential coverage under the Excess Policy.

34. By reason of the foregoing, Great American is entitled to a judgment declaring that the Underlying Action does not fall within the scope of the Excess Policy's Insuring Agreement, which follows form only to the Primary Policy's Commercial General Liability Coverage Part and not the Liquor Liability Coverage Part.

## COUNT II

### (Declaratory Judgment As To Application of the Liquor Liability Exclusion)

35. Great American incorporates by reference each of the allegations of paragraphs 1 through 31 of this Complaint.

36. The Underlying Action is barred from coverage by the Liquor Liability Exclusion in the Excess Policy. Specifically, the complaints in the Underlying Action assert that Turnoutz negligently, carelessly, and/or recklessly sold alcohol to Mr. Sheward with knowledge that Mr. Sheward would be driving while intoxicated. Therefore, the Underlying Action is barred from coverage by the Liquor Liability Exclusion in the Excess Policy.

37. By reason of the foregoing, Great American is entitled to a judgment declaring that that the Liquor Liability Exclusion in the Excess Policy bars coverage for the Underlying Action.

WHEREFORE, Great American respectfully requests that this Court enter judgment as follows:

1. Declare that the Underlying Action does not fall within the scope of the Excess Policy's Insuring Agreement, which follows form only to the Primary Policy's Commercial General Liability Coverage Part and not the Liquor Liability Coverage Part;

2. Declare that the Liquor Liability Exclusion in the Excess Policy bars coverage for the Underlying Action; and

3. Award Great American such additional declaratory and other relief as the Court finds appropriate.

Dated: May 17, 2019

By: /s/ Richard A. Simpson
Richard A. Simpson (VSB No. 32454)
WILEY REIN LLP
1776 K Street, NW
Washington, DC 20006
(202) 719-7000
(202) 719-7049 (facsimile)
rsimpson@wileyrein.com

Attorneys for Plaintiff
Great American E&S Insurance Company